PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN ORTA PERDOMO, Defendant and Appellant.

No. 4007.   Argued June 5, 1930.—Decided August 2, 1930.

*Celestino Iriarte, Jr.,* for appellant.   *R. A. Gómez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

An information was filed by the district attorney against Juan Orta Perdomo charging him with murder in the second degree.   He was tried before a jury, which found him guilty, and the court sentenced him to twenty years' imprisonment at hard labor in the penitentiary.

He took an appeal from that judgment and has assigned four errors, the first of which is formulated thus:

"The court erred in giving the following instructions to the jury:
"'In order to reduce murder to manslaughter, there must exist sufficient provocation to excite an irresistible passion in a person of ordinary temper. This means that in order that the crime of murder may be reduced to the degree of manslaughter there must be present some provocation sufficient to excite an irresistible passion in a person of ordinary self-control, that is, the person who committed the offense must have acted on a provocation, causing him to lose his self-control; if such provocation is absent, the crime is not manslaughter but murder. The provocation must be considerable, and if no considerable provocation exists, malice is presumed. The heat of passion must be contemporaneous with the act charged.'"

There is no question that the instruction complained of is not a model one and might have been clearer, but after a careful examination of it in connection with other instructions given, the conclusion must be reached that it is not erroneous nor could have prejudiced the defendant.

"Murder is the unlawful killing of a human being, with malice aforethought," says section 199 of the Penal Code. "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: 1. Voluntary—upon a sudden quarrel or heat of passion, . . .," recites section 203 of the Penal Code.

The appellant maintains that the law does not require for the commission of manslaughter, as defined by section 203, any provocation whatever, the absence of malice being sufficient.

However, when it is considered that section 200 of the said code establishes that malice—which, according to section 559 of the same code, "imports the doing of a wrongful act, intentionally, without just cause or excuse, a conscious violation of the law to the prejudice of another"—is of two kinds, to wit: express, where there is manifested a deliberate intention unlawfully to take away human life, and implied, *when no considerable provocation appears,* it will be seen that the absence of malice, which the law requires to bring the unlawful killing of a human being within the purview of

section 203, and not section 199, rests on the absence of a deliberate purpose to take away the life of a fellow-creature, or on the nonexistence of a considerable provocation. The sudden quarrel and the heat of passion must arise from the provocation of an adversary. For the sake of further clarification of the concept, we will reproduce here the following excerpts taken from the brief of the *Fiscal:*

"So that it is not, as the defendant and appellant states in the language above transcribed, 'that it is sufficient if it happens upon a sudden quarrel or heat of passion,' but that it is necessary that said sudden quarrel or heat of passion must have been caused by considerable provocation, because if no such considerable provocation existed, then, even though there may have been a sudden quarrel or heat of passion, the offense would be murder and not manslaughter, since, in case no considerable provocation appears, malice is present notwithstanding the existence of a sudden quarrel or heat of passion.

"In other words, the sudden quarrel or heat of passion must have been produced by such a considerable provocation as to excite passion and arouse the spirit, in order that the unlawful killing, carried out in such state of mind, may be rendered manslaughter instead of murder. It is not a mere argument between two persons, or the heat of passion aroused in a person without justification or cause, which reduces an unlawful killing from murder to manslaughter, because under those circumstances the killing would be murder, notwithstanding the existence of the mere argument or the unjustifiable heat of passion.

"Or expressed in a different way. Under our statute (see sections 199, 200 and 201 of the Penal Code) the unlawful killing may be perpetrated in two ways, with or without malice. That perpetrated with malice may be done with express or implied malice. When caused with express malice the killing may be brought about in three ways: first, in a wilful, deliberate and premeditated manner; second, by means of poison, lying in wait, or torture; and third, when committed in the perpetration, or attempt to perpetrate arson, rape, robbery, burglary or mayhem.

"It is perpetrated with implied malice when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. The killing with express malice in the three manners already stated constitutes murder in

the first degree; when perpetrated with implied malice it is murder in the second degree.''

In *People* v. *Morales, alias Yare-Yare,* 11 P.R.R. 294, 301, the District Court of Mayagüez instructed the jury as follows:

'' '. . . Implied malice aforethought is present when there has been no provocation from the victim or it is not considerable—that is to say, sufficient to justify an attack; therefore, if there has been no motive constituting a provocation leading to the attack, and consequent killing, the malice aforethought is implied. . .' ''

This instruction was claimed to be erroneous, and this court expressed itself as follows in regard thereto (p. 305):

''The explanation of the judge to the jury of the meaning of implied malice aforethought conforms to the definition given thereof in section 200 of the Penal Code, which provides that it exists when 'no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' The provocation is not considerable when it is not sufficient or adequate to warrant an attack, and the judge in so holding, in our opinion, conformed to the provisions of the Penal Code.''

Therefore, the first of the errors assigned has not been committed.

Let us now consider the second assignment. It is urged therein that the summary of the evidence by the judge was insufficient and biased against the defendant.

It does not appear that the court was requested to supplement its instructions and the summary of the evidence set forth in the instructions conforms to what fully appears from the transcript. There was no error.

In *People* v. *Boria,* 12 P.R.R. 166, 167, this court said:

''Should the court fail to instruct the jury upon certain points deemed by the accused to be essential, or if the instructions are defective or incomplete, the accused may ask that such instructions be given, or that they be enlarged upon as may be proper, or he may present written instructions to the court which, if rejected, may be considered on appeal; but if the accused accepts the instructions of the court he cannot subsequently attack them on the ground that they are deficient or incomplete.''

"The fact that the judge omitted the testimony of a witness in summing up the evidence is not sufficient to avoid a verdict, if such omission was not alleged in time to afford an opportunity to correct the defect, and especially if the judge instructs the jury that before finding its verdict it should examine all of the evidence taken, not only that referred to by him in his instructions but any that he might have involuntarily omitted."

The third of the errors assigned was not committed either. The instruction which is attacked, namely, "the jury has no right to disregard the evidence admitted by the court, nor to arbitrarily reject the testimony of a witness," is correct.

We have examined the instruction relative to self-defense objected to in the fourth or last assignment and in our opinion it is also correct. We do not transcribe it nor do we discuss the question in detail, since our own jurisprudence in that respect is abundant and no novel question is presented.

The act with which the defendant was charged, and for which he was convicted, is thus explained by witness Gumersinda Cruz:

"Well, he arrived about five in the afternoon at my house, I was in the cemetery watering some plants, as usual, with my daughter. While watering the plants he arrived with Manolo Brito and Dámaso Cruz, and then stopped in front of the cemetery's gate with Manolo Brito and Dámaso Cruz and spoke some words to Gregorio David which I could not hear, and then Gregorio David called me and told me to come and I came, and then he said to me: 'that who were the men who used to go there in his absence,' because he had left Juan Laborde there until he returned from Ponce, where he went to take some money to a little girl of his, and then I told him that three men from Descalabrado had been there bringing a cross, but as I did not know where the grave was located it had not been put in place; then Juan Orta said to me, 'you are a wretched strumpet,' he slapped my face and threw me to the ground; when he threw me to the ground my husband came to me and while doing so he arrived, drew a dagger and stabbed him in the back, Gregorio David felt a wound, stopped thus, I did not see whether or not he grabbed, and when he rose, Juan Orta jumped to one side and said to him: 'fire if you dare,' and he fired a shot at him and hit him here, when he fell

writing I immediately went to his help and went into the house to dress his wound, and then Orta came and grabbed me and knocked me twice against the ground, against the wall.''

The judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.